IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

STEWART CARNEY, JR., surviving spouse
of the decedent MONICA JEAN JOHNSON,
in his personal capacity, and
ROBERTA E. WINCHELL, ESQ. in her
capacity as Personal Representative of the
ESTATE OF MONICA JEAN JOHNSON,

       Plaintiffs,

v.

HANCOCK COUNTY, MAINE;
SCOTT KANE, in his individual and official
capacities as Hancock County Sheriff;
TIMOTHY RICHARDSON, in his
individual and official capacities as Hancock
County Jail Administrator; FRANK L.
SHEPARD, in his individual and official
capacities as Hancock County Assistant Jail
Administrator; AROOSTOOK MENTAL
HEALTH SERVICES, INC., a Maine
Corporation of Caribou, Aroostook County,
State of Maine;
KAYLA DUMOND; NOAH LEWEY;
TRAVIS YOUNG; RUSSELL WILSON;
CHRISTOPHER STANLEY;
JILLIAN JONES; ALICIA LAMBERT;
W. A. SCHAFFER; JOHN DOE I; and
JOHN DOE II,

      Defendants.

Civil Action No. _____

COMPLAINT

Plaintiffs Stewart Carney, Jr., in his personal capacity, and Roberta E. Winchell,

Esq., in her capacity as Personal Representative of the Estate of Monica Jean Johnson

(known, collectively hereafter as "Plaintiff"), bring this civil rights and wrongful death complaint, by and through their undersigned attorney, and alleged as follows:

## JURISDICTION AND VENUE

Plaintiff has suffered injuries due to the wrongful actions of the Defendants, and this action is a case or controversy over which this Court has jurisdiction under Article III of the United States Constitution.

1.      This case is brought pursuant to 42 U.S.C. § 1983, with a supplemental state claim for wrongful death. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over the state law claim pursuant to 42 U.S.C. § 1367.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b), because the claims for relief arose in this District.

3.      Plaintiff has complied with Me. Rev. Stat. tit. 14, § 8107, part of the Maine Tort Claims Act, in that he/she timely filed a notice of tort claim with Defendant Hancock County. The claim was denied.

## PARTIES

4.      Decedent, Monica Jean Johnson ("Decedent"), is represented in this litigation by Roberta E. Winchell, Esq., as the Personal Representative of the Estate of Monica Jean Johnson. The successor in interest of the Decedent is her husband, Stewart Carney, Jr. The Decedent was at all times mentioned incarcerated at the Hancock County

Jail. The Decedent died as a result of the unlawful actions of the above-named Defendants. The Decedent and her Personal Representative bring this complaint for relief through her Estate and her husband Stewart Carney, Jr., her successor in interest.

5.      Plaintiff Stewart Carney, Jr. is a resident of the City of Brewer, County of Penobscot, State of Maine, who brings his claims for relief in his own right and as successor in interest to the Estate of Monica Jean Johnson.

6.      Plaintiff Roberta E. Winchell, Esq., the personal representative of the Estate of Monica Jean Johnson, is a resident of the City of Bangor, County of Penobscot, State of Maine, who brings this claim for relief on behalf of the Estate of Monica Jean Johnson.

7.      Defendant Hancock County, Maine, is a political subdivision of the State of Maine.

8.      Defendant Aroostook Mental Health Services, Inc., is a Maine Corporation that provides health services for various locations in Maine, including the Hancock County Jail in the City of Ellsworth, County of Hancock, State of Maine.

9.      During all times mentioned, Defendant Scott Kane was the Hancock County Sheriff. He was the chief county law enforcement officer for Hancock County, having custody and charge of the Hancock County Jail and of all prisoners in that jail.

10.     During all times mentioned, Defendant Timothy Richardson was Jail Administrator at the Hancock County Jail.

11.     During all times mentioned, Defendant Frank L. Shepard was Assistant Jail

Administrator at the Hancock County Jail.

12.    During all times mentioned, Defendant Kayla Dumond was a Correctional Officer at the Hancock County Jail.

13.    During all times mentioned, Defendant Noah Lewey was a Correctional Officer at the Hancock County Jail.

14.    During all times mentioned, Defendant Travis Young was a Correctional Officer at the Hancock County Jail.

15.    During all times mentioned, Defendant Russell Wilson was a Correctional Officer at the Hancock County Jail.

16.    During all times mentioned, Defendant Christopher Stanley was a Correctional Officer at the Hancock County Jail.

17.    During all times mentioned, Defendant Jillian Jones was a Correctional Officer at the Hancock County Jail.

18.    During all times mentioned, Defendant Alicia Lambert was a Licensed Social Worker at the Hancock County Jail.

19.    During all times mentioned, Defendant W.A. Schaffer, M.D., was a psychiatrist employed to provide psychiatric services for detainees at the Hancock County Jail, including the Decedent. Defendant Schaffer was responsible for the adequate provision of medical care to the detainee population at the Hancock County Jail, including the Decedent, pursuant to the Fourteenth Amendment of the United States

Constitution and other applicable law.

20.     During all times mentioned, Defendants John Doe I and John Doe II were employees or agents of the Hancock County Jail, whose identity has not yet been determined. The names of other officers, health care providers, staff and other personnel involved in the incidents out of which this Complaint arises, and those officers, staff and personnel responsible for supervision, training, and determination of policy whose acts or omissions were material to the unlawful death of the Decedent are at this time unknown to Plaintiff. Consequently, Plaintiff sues these Defendants under the fictitious names of John Doe I and John Doe II. Plaintiff will amend this Complaint to allege the true names and capacities when ascertained. Plaintiff is informed and believes and, on that basis, alleges that each of the fictitiously named Defendants is liable for the acts and omissions concerning the events and happenings referred to, which proximately caused damages and injuries to Plaintiff.

21.     Defendants Kane, Richardson and Shepard were responsible for decisions concerning staff employment and training, and the preparation, selection and implementation of policies, procedures and guidelines concerning the protection of detainees at the Hancock County Jail from suicide and self-harm. They were also responsible for the conduct of the employees and contractors at the Hancock County Jail, including correctional officers and medical staff. The decisions made regarding policies for the protection of detainees' physical safety, and the medical and psychiatric policies by these Defendants, directly and adversely affected the Decedent's ability to be safe

from psychiatric indifference and suicide.

22.     The named Defendants are sued in their individual capacities and as employees of Hancock County and the Hancock County Jail.

23.     Plaintiff is informed and therefore believes and, on that basis, alleges that at all times and places mentioned, each of the Defendants was the agent, representative and/or employee of the remaining Defendants and was, at all times and places mentioned, acting within the purpose and scope of that agency, representation and/or employment.

24.     The events giving rise to this Complaint occurred in Hancock County, Maine, within the jurisdiction of the United States District Court for the District of Maine.

25.     At all times mentioned, all of the named Defendants were acting within the course and scope of their employment and under color of state law.

26.     All of the individuals named as Defendants are sued in their individual and official capacities.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

27.     The allegations in this section are alleged on Plaintiff's information and belief and, on that basis, are alleged to be true.

28.     The Decedent was incarcerated at the Hancock County Jail on September 21, 2018, having been arrested on drug-related charges.

29.     Forms completed by the Decedent for standardized screening indicate that she was suffering from severe depression and anxiety.

30.     The Decedent had high scores on a form or test meant to indicate any suicidal tendencies.

31.     The Decedent, on an inmate medical request form submitted on September 24, 2018, asked to see a psychiatrist and asked for that help "ASAP," using exclamation marks for emphasis.

32.     On September 26, 2018, Defendant Alicia Lambert administered a checklist form to the Decedent that is used as an inmate safety assessment by the Hancock County Jail.

33.     At least two other detainees in the same cell block who had seen the Decedent expressed concern about the Decedent and told jail authorities and personnel that the Decedent had spoken of harming or killing herself, and that she may have already tried to harm herself.

34.     One detainee reported to the Maine State Police in a subsequent investigation that the Decedent had told her that the Decedent planned to hang herself in the shower but decided not to when she was temporarily cheered up by fellow detainees.

35.     At one point, the Decedent had tied a bra around her neck while in the Hancock County Jail.

36.     The Decedent had suffered a traumatic brain injury about one-and-a-half

years before her suicide.

37.   The Decedent previously had been hospitalized for mental illness, and she had previously been incarcerated.

38.   The Decedent had experienced weight loss and possibly post-traumatic stress disorder while incarcerated in the Hancock County Jail.

39.   Notwithstanding the multiple indications and warnings that the Decedent was at high risk for suicide, and their awareness of same, the Defendants took no action to protect her from suicide or to provide appropriate medical care.

40.   Notwithstanding the multiple indications and warnings that the Decedent was at high risk for suicide, shortly before her suicide, the Decedent was moved into the general jail population, and into a cell by herself, where she would commit suicide.

41.   There was a delay of one or two days before the Decedent was given only a phone conversation with a psychiatrist, Defendant Schaffer, not an in-person consultation.

42.   The psychiatrist, Defendant Schaffer, failed to act on the screening information indicating a risk of suicide for the Decedent, and he performed no suicide risk assessment.

43.   The Decedent was never put on a suicide watch at the Hancock County Jail.

44.   The Hancock County Jail's policies concerning psychiatric services for detainees were vague and out of date.

45.   The Decedent hung herself with a bed sheet at 4:52 a.m. on September 29, 2018, having been last observed in her cell at 4:21 a.m. that day.

46.   Throughout her incarceration at the Hancock County Jail, the Decedent never received the level of medical and mental health diagnosis, medication or treatment she needed and which the Defendants were constitutionally required to provide. Because of the way she was treated by the Defendants, the Decedent gradually exhibited increasing signs of severe depression and possible suicidal ideation, yet a comprehensive treatment plan for her physical and mental health was never developed. Instead, she was either mistreated or ignored by the Defendants, in a manner showing deliberate indifference to the Decedent's need for mental health care and protection against suicide.

### FIRST CLAIM FOR RELIEF
(Violation of 42 U.S.C. § 1983)
Denial of Rights Under the United States Constitution, Fourteenth
Amendment; Deliberate Indifference to Medical and Mental Health Needs

47.   Plaintiff incorporates by reference all of the preceding paragraphs as if set forth here.

48.   Defendants Kane, Richardson and Shepard, as Hancock County Sheriff, Hancock County Jail Administrator and Assistant Hancock County Jail Administrator, respectively, were responsible for establishing, implementing and enforcing policies, practices and procedures designed to assure that the Decedent, as a pretrial detainee incarcerated at the Hancock County Jail, received adequate medical attention and treatment, including treatment for anxiety and depression, and that she be protected from

self-harm and suicide.

49.     However, Defendants Kane, Richardson and Shepard's policies, practices and procedures were not designed to assure that the Decedent received adequate medical attention and treatment for her anxiety and depression, or that she be protected from self-harm and suicide.

50.     Thus, Defendants Kane, Richardson and Shepard adopted policies, practices, and procedures which they knew, or reasonably should have known, would be ineffective in delivering adequate medical attention and treatment for serious mental health needs, and in protecting her from self-harm and suicide.

51.     The remaining individual Defendants, as correctional officers, a licensed social worker and a psychiatrist working at the Hancock County Jail, were deliberately indifferent to the Decedent's suicidal condition. Their acts and omissions deprived the Decedent of needed medical care and protection from self-harm and suicide, thereby causing the deprivation of the Decedent's clearly established constitutional rights.

52.     The policies, customs and practices of Hancock County, at the Hancock County Jail, were the moving force behind, and the proximate cause of, the violation of the Decedent's constitutional rights which led to her suicide.

53.     All of the Defendants were acting in the scope of their official duties and under color of state law.

54.     The acts and omissions of all of the Defendants violated the Decedent's

substantive right to due process under the Fourteenth Amendment to the United States Constitution, in that they denied the Decedent adequate medical care and treatment and protection from self-harm and suicide.

55.    As a result of the actions and omissions of all of the Defendants, and each of them, the Decedent was not provided adequate or necessary medical and mental health services, nor protection against suicide. These deprivations resulted in the Decedent's death by suicide, causing her great physical pain and suffering, great mental pain and shock to her nervous system, and, ultimately, death.

56.    The deliberate indifference caused a grave harm resulting in the Decedent's death by suicide. The Defendants had actual or constructive knowledge of that risk, and the Defendants failed to take easily available measures to address the risk to prevent the suicide.

57.    The physical and emotional injuries suffered by the Decedent were the result of the named and unnamed Defendants' recklessness, oppression, and deliberate indifference to her suicidal condition. Plaintiff is therefore entitled to punitive damages against the individual Defendants for the pain and suffering the Decedent experienced prior to her death.

### SECOND CLAIM FOR RELIEF
(Violation of 42 U.S.C. § 1983)
Failure to Train and Supervise Employees

58.    Plaintiff incorporates by reference all of the preceding paragraphs as if set

forth here.

59.     Defendant administrative and supervisory personnel were charged by law with the selection, assignment, supervision and training of officers, psychiatrist and medical staff, employees, and contracted medical practitioners for the Hancock County Jail. At all times material, they failed to properly train and supervise personnel regarding policy and procedures, and state and federal statutory duties to provide detainees with necessary and appropriate medical and mental health services, to respond to detainees' apparent immediate needs for mental and/or medical treatment, and to protect against detainees' self-harm and suicide.

60.     Defendants' clear deliberate indifference in failure of administrative and supervisory roles to provide training and supervision was the deficient performance of the task that contributed to the civil rights deprivation.

61.     The failure of administrative and supervisory roles of the Defendants in providing training and supervision regarding the statutory and constitutional duties to provide safe custody for detainees entrusted to their care and to provide necessary and adequate mental health services amounts to gross negligence and a deliberate indifference to the safety and lives of detainees. This gross negligence and deliberate indifference were proximate causes of the death of the Decedent.

62.     The acts and omissions of all of the individual Defendants demonstrated reckless indifference to and a conscious disregard for the well-being of the Decedent and her constitutional rights.

63.     As a result of the actions and omissions of all of the Defendants, and each of them, the Decedent was not provided adequate or necessary medical and mental health services, nor protection against suicide. These deprivations of the Decedent's substantive right to due process under the Fourteenth Amendment to the United States Constitution resulted in the Decedent's death by suicide, causing her great physical pain and suffering, great mental pain and shock to her nervous system, and, ultimately, death.

64.     The physical and emotional injuries suffered by the Decedent were the result of the named and unnamed Defendants' recklessness, oppression, and deliberate indifference to her suicidal condition. Plaintiff is therefore entitled to punitive damages against the individual Defendants for the pain and suffering the Decedent experienced prior to her death.

## THIRD CLAIM FOR RELIEF
### (Pendent State Claim—Wrongful Death)
(Me. Rev. Stat. tit. 18-C, § 2-807; Me. Rev. Stat. tit. 14, § 8104-C)

65.     Plaintiff incorporates by reference all of the preceding paragraphs as if set forth here.

66.     All of the Defendants, and each of them, had the duty to provide immediate medical care to the Decedent who suffered a serious and obvious medical condition, that is, severe anxiety and depression, and to protect the Decedent from self-harm or suicide. Staff and other detainees had complained to the Defendants that the Decedent was suicidal, and the Decedent herself had urgently asked for help, but the Defendants failed and/or refused to summon and provide necessary medical care to address the Decedent's

serious and obvious medical condition, and otherwise to protect her from committing suicide.

67.    All of the Defendants knew, or in the exercise of ordinary care should have known, that the Decedent was severely depressed, to the point of being suicidal.

68.    Among other negligent acts or omissions, the Defendants failed to provide regular and continuous observation and supervision of the activities of the Decedent.

69.    Despite the Defendants' actual and/or constructive knowledge of the Decedent's desperate need for medical care, the Defendants negligently failed or refused to provide the Decedent with adequate medical assistance or to protect her from suicide, thereby breaching duties they owed to the Decedent.

70.    As a legal and proximate result of the Defendants' failure to provide adequate medical care and to protect the Decedent from suicide, the Decedent suffered great physical pain, great mental pain, shock to her nervous system, and, ultimately, death, all to Plaintiff's damage as set forth below.

71.    The Defendants have been guilty of recklessness and conscious disregard for the Decedent's well-being while she was in their custody and care, leading to the death of the Decedent. As a consequence, Plaintiff is entitled to punitive damages against the individual Defendants, attorney's fees, and costs.

## REQUEST FOR RELIEF

WHEREFORE, as a proximate result of the Defendants' wrongful and unlawful

actions described above, Plaintiff requests the following:

1.  Mortuary, funeral and burial expenses, and incidental expenses;

2.  General damages as to the Decedent, including damages for physical and emotional pain, emotional distress, hardship, suffering, shock, worry, anxiety, sleeplessness, illness and trauma and suffering and, for Plaintiff, the loss of the services, society, care and protection of the Decedent;

3.  Punitive damages against the individual Defendants, according to proof;

4.  Prejudgment interest;

5.  Attorney fees and costs pursuant to 42 U.S.C. § 1988; and

6.  Such other and further relief as the Court deems just and proper.

Dated: September 25th, 2020.

/s/ Carl D. McCue

Carl D. McCue, Esquire
Law Office of Carl D. McCue, LLC 40
Western Avenue
Post Office Box 655
Hampden, ME 04444-0655
Attorney for Plaintiff